# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 13-544V
Filed: March 28, 2014

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
TERRY L. KEGLER,                          \*
                                          \*
            Petitioner,      \*   Special Master
v.                                        \*   Hamilton-Fieldman
                                          \*
SECRETARY OF HEALTH                       \*
AND HUMAN SERVICES,                       \*   Vaccine Act Attorneys' Fees; Reasonable
                                          \*   Basis for a Claim.
            Respondent.      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Thomas P. Gallagher, Somers Point, NJ, for Petitioner

Ryan D. Pyles, Washington, DC, for Respondent

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

### I
### BACKGROUND AND PROCEDURAL HISTORY

On August 5, 2013, Petitioner filed a Petition for Vaccine Compensation in the National Vaccine Injury Compensation Program ("the Program") alleging that an influenza vaccine Petitioner received on October 18, 2011, significantly aggravated Petitioner's preexisting GBS. Pet., ECF No. 1. Doctors first diagnosed Petitioner's GBS on February 8, 2010. Pet'r's Ex. 2, at 166.

On November, 6 2013, Petitioner filed a Motion for Judgment on the Record, stating that a review of Petitioner's medical records revealed no exacerbation of the preexisting GBS. Pet'r's

---

[1] The undersigned intends to post this published decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party (1) that is trade secret or commercial or financial information and is privileged or confidential, or (2) that are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, "the entire" decision will be available to the public. *Id.*

1

Mot. J. R., ECF No. 11.  On November 13, 2013, Respondent filed a response agreeing with Petitioner's stance that the medical records did not show that an influenza vaccine administered on October 18, 2011, aggravated Petitioner's preexisting GBS. Resp't's Resp. Mot. J. R., ECF No. 12.  Consequently, Respondent requested Petitioner's claim be dismissed. *Id*.  On November 20, 2013, the undersigned dismissed Petitioner's claim because an examination of the record failed to show any injury stemming from an October 18, 2011 influenza vaccination. J., ECF No. 14.

      Following dismissal of Petitioner's claim, on February 6, 2014, Petitioner filed an "Application for Fees and Costs," seeking $13,035.00 in attorney's fees, $2037.28 for obtaining medical records, and $400.00 in filing fees. Pet'r's Mot. Atty's Fees, ECF No. 16.  On February 24, 2014, Respondent filed a "Response and Opposition to Petitioner's Application for Fees and Costs," asserting that Petitioner failed to establish a reasonable basis for bringing the claim because Petitioner's medical records indicate that Petitioner's GBS remained stable after the alleged influenza vaccination. Opp'n Fees Costs, ECF No. 17.

      On March 6, 2014, Petitioner filed a "Reply to Respondent's Opposition to Petitioner's Application for Fees and Costs." Pet'r's Reply Resp't's Opp'n Fees Costs, ECF No. 18.  In Petitioner's Reply, Petitioner's counsel asserts that Petitioner originally sought counsel's assistance on Sept 6, 2011, for a February 8, 2010 diagnosis of GBS allegedly resulting from an influenza vaccination received on November 12, 2009. *Id*.  Counsel's billing records reflect that he obtained authorizations from his client and began collecting medical records immediately. Pet'r's Mot. Atty's Fees 4-5.  Those billing records also reflect that counsel received Petitioner's military vaccination record, later filed as Petitioner's Exhibit 7, from Womack Army Medical Center on November 16, 2011. Pet'r's Mot. Atty's Fees 4-5; Pet'r's Ex. 7, at 4-5, ECF No. 8.  Petitioner's Exhibit 7 consists of seven pages. Pet'r's Ex. 7.  It shows a regular vaccination pattern through 2007, including an influenza vaccination on November 7, 2007. Pet'r's Ex. 7, at 4-5.  Thereafter, Exhibit 7 reflects a four-year gap during which no vaccines were administered to Petitioner, at least none that were administered or recorded at Womack Army Medical Center. *Id*.  The last entries on the Exhibit 7 vaccination record are those from October 18, 2011, where the lines for every possible version of the influenza vaccine (i.e., intranasal, intradermal, etc.) reflect that the vaccine was not administered, with "Medical (Perm)" noted in the "Exemption Column." *Id*.

      Despite this clear record documenting that no influenza vaccine was administered to Petitioner on October 18, 2011, Petitioner's counsel filed a petition on Petitioner's behalf asserting that Petitioner suffered injuries resulting from that alleged vaccine. Pet. at 1.  As recently as in his Reply Brief filed March 6, 2014, Petitioner's counsel asserted that "[n]one of the [10,000 pages of Petitioner's medical] records contradict the recorded October 18, 2011 influenza vaccine administration," and that the alleged October 18, 2011 influenza vaccination "nullified" that "[Petitioner] had an influenza vaccination on November 2009." Pet'r's Reply Resp't's Opp'n Fees Costs 1.

2

It is unclear what accounts for the four-year gap in Petitioner's vaccination record from Womack Medical Center.  No other vaccination record was ever received by the Court in this case. It is clear, however, that Petitioner never brought a claim or alleged any injury resulting from a November 12, 2009 vaccination.  Even if Petitioner could now show that he received a vaccination on November 12, 2009, the Act's statute of limitations would preclude Petitioner from bringing a claim based on that vaccination. *See* 42 U.S.C. 300aa-16(a)(2) (The statute provides 36 months "after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury."  Petitioner's GBS diagnosis occurred on February 8, 2010; therefore, the statute of limitations expired on February 8, 2013).  Finally, Petitioner has acknowledged that he suffered no exacerbation of his GBS following an alleged influenza vaccination in 2011. Pet'r's Mot. J. R. 1.

## II
## APPLICABLE LAW

Under 42 U.S.C. §300aa-15(e)(1)(B), if the judgment on a petition does not award compensation, the special master may award compensation to cover a petitioner's reasonable attorneys' fees and costs incurred in any proceeding arising out of the petition if the special master determines that the petitioner brought the claim in good faith, and there was a reasonable basis for the petitioner's claim.  According to 42 U.S.C. § 300aa-11(b)(1)(A), eligibility to file a petition under the Program requires that one "sustained a vaccine-related injury . . . as the result of the administration of a vaccine set forth in the Vaccine Injury Table."  Furthermore, 42 U.S.C § 300aa-11(c)(1)(A) states that a petition for compensation under the Program for a vaccine-related injury or death "shall contain . . . supporting documentation, demonstrating that the person who suffered such an injury . . . received a vaccine set forth in the Vaccine Injury Table."

The good faith of Petitioner's claim is not disputed.  He suffered from GBS in February 2010, which he believed was caused by his receipt of an influenza vaccine in 2009. Pet'r's Ex. 2, at 166.  Therefore, the only issue is whether Petitioner had a reasonable basis for bringing the claim.

Neither the Vaccine Act nor the rules governing the Program's proceedings define "reasonable basis."  There is little definitive guidance on what constitutes "reasonable basis," and the Federal Circuit has not interpreted the meaning of "reasonable basis."  In the absence of a codified definition, special masters and the Court of Federal Claims have held that reasonable basis is an objective standard determined by the totality of the circumstances. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011) (citing *Hamrick*, 2007 WL 4793152, at *4).  In *Murphy v. Secretary of Health and Human Services*, the Court of Federal Claims held that prior to accepting a case, "an attorney should be able to distinguish a case that has reasonable underpinnings from one that does not," and that "an attorney should use reasoned judgment to accept or pursue a claim." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (Fed. Cl. 1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995).  In *Silva v. Secretary of Health and*

3

*Human Services*, the Court of Federal Claims held that special masters maintain broad discretion in awarding attorneys' fees when no compensation is awarded on a petition. *Silva v. Sec'y of Health & Human Servs.,* 108 Fed. Cl. 401, 405 (Fed. Cl. 2012); *see also Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). Petitioners carry the burden of affirmatively demonstrating a reasonable basis. *McKellar*, 101 Fed. Cl. at 305.

Special masters may consider a number of factors in evaluating whether a reasonable basis existed for filing a vaccine claim, including the factual basis for the claim and the medical support in favor of the claim. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Reasonable basis is lacking, however, when a petitioner's attorneys do not properly investigate a case before filing it. *Silva*, 108 Fed. Cl. at 405 (finding no reasonable basis when a petitioner's attorney failed to perform minimal investigation because no medical evidence suggested the alleged vaccine caused an injury). The crux of a court's finding that a claim lacked reasonable basis is a determination that counsel failed to make fundamental inquiries about the case. *Stevens v. Sec'y of Health & Human Servs.,* No. 90-221V, 1992 WL 159520, at *4 (Cl. Ct. Spec. Mstr. June 9, 1992), *aff'd, 996 F.2d 1236* (Fed. Cir. 1993) (denying fees where doctor and lawyer ignored glaring inconsistency between medical records and factual allegations); *see also Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 33-35 (1992) (denying fees after a lawyer failed to question the information of particular interest, on which the expert premised his or her opinion).

### III
### DISCUSSION

In the present case, Petitioner's medical records do not support Petitioner's assertion that he received an influenza vaccination on either of the alleged dates, November 12, 2009, and October 18, 2011. Pet'r's Ex. 7, at 4. Even a cursory glance at Petitioner's vaccination record reveals Petitioner's most recent influenza vaccination was on November 7, 2007, and that Petitioner never received a vaccination of any type in 2009. Pet'r's Ex. 7, at 4-5. In addition, Petitioner's vaccination record lists the line corresponding to every subsequent influenza vaccination Petitioner could have received and shows that Petitioner was medically exempt from receiving an influenza vaccination. *Id*.

Petitioner's counsel began collecting medical records on September 26, 2011, nearly three weeks before the October 18, 2011, vaccination alleged in the Petition. Pet'r's Mot. Atty's Fees 4. Presumably, Petitioner's counsel believed Petitioner received a vaccination on November 12, 2009, that caused or contributed to Petitioner's GBS diagnosis on February 8, 2010. The undersigned assumes that Petitioner's counsel began collecting Petitioner's medical records to investigate a November 12, 2009 vaccination but failed to locate evidence of a vaccination on this date. The fact that Petitioner first met with counsel on September 9, 2011, and first requested medical records on September 26, 2011, is consistent with this version of the events. *Id*. Petitioner's counsel received the vaccination record on November 16, 2011. Pet'r's

4

Ex. 7, at 1.  According to Petitioner's counsel's time records, medical records were reviewed on November 10, 2011 and November 11, 2011. Pet'r's Mot. Atty's Fees 4.  The only time billed for reviewing medical records after receipt of the vaccination record on November 16, 2011, occurred on March 22, 2013. *Id.* at 5.  Petitioner's counsel had over one year and four months to discover that Petitioner did not receive an influenza vaccination that coincided with either Petitioner's GBS diagnosis or an exacerbation of the GBS.  It is also important to note that by the time Petitioner's counsel reviewed the vaccination records on March 22, 2013, the statute of limitations for alleging that a vaccine caused Petitioner's February 8, 2010 GBS had already passed.

Finally, Petitioner's medical records do not show any exacerbation of Petitioner's GBS after the alleged October 18, 2011 vaccination.  Petitioner's counsel concedes that "there was no exacerbation of Petitioner's pre-existing GBS," after the alleged October 18, 2011 vaccination. Pet'r's Mot. J. R. 1.  In addition, Petitioner's medical records show Petitioner's GBS condition was stable. Pet'r's Ex. 2, at 166.

Here, a minimal investigation would have uncovered either that Petitioner's GBS condition was stable or that Petitioner never received an influenza vaccination that corresponded with an exacerbation of Petitioner's GBS.  Petitioner's counsel possessed Petitioner's vaccine records for nearly a year and a half.  The undersigned determines that this is ample time for Petitioner's counsel to discover that Petitioner never received an influenza vaccination on any alleged date that coincided with Petitioner's GBS diagnosis.  In addition, even if Petitioner did receive an influenza vaccination on November 12, 2009, that is not in Petitioner's medical records, Petitioner's counsel allowed the statute of limitations to expire, precluding Petitioner from bringing this claim.  These facts are not buried in the medical record.  There was more than sufficient time to discover any of these facts.  Petitioner's counsel clearly failed to perform fundamental due diligence.  Consequently, there was no reasonable basis for the filing of Petitioner's claim, and Petitioner is not entitled to fees and costs.

## III

## CONCLUSION

For the reasons stated herein, Petitioner's motion for fees and costs is **DENIED.**  In the absence of a timely-filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.

**IT IS SO ORDERED.**

                                                      /s/ Lisa D Hamilton-Fieldman.
                                                      Lisa D Hamilton-Fieldman
                                                      Special Master